Good morning. Good morning. May it please the court, my name is Larry Liam Doan and I'm representing the petitioner Manuel Valencia. Your Honor, this case is the first impression in this circuit and the only issue here is whether the, we're challenging the regulation 8 CFR 1245.10J, whether that improperly narrow the scope of grandfathering benefits to certain aliens in that it contradicts the statute in question which is INA section 245I. Does the statute say anything about substitute beneficiaries? Does it specifically address that question in any way? No, Your Honor, absolutely not. Is the statute ambiguous because it silences that issue? Your Honor, we believe that the plain language of the statute, it uses the term beneficiary throughout and there's no need to go below and search for the ambiguity. But even if it is ambiguous, this court is not bound to defer to that regulation as I explained in the brief due to the arbitrary nature. It also contradicts another subsection of the same regulation scheme. But I don't know looking at the term beneficiary that it applies to valid direct beneficiary only or whether substitute beneficiaries which is permissible in the labor certification applications are also included within the term beneficiary. Yes, you're correct, Your Honor. The term beneficiary, there are different types of beneficiary. For example, there could be derivative beneficiaries. And the statute does mention, for example, spouses and children of the principal alien are derivatives. The statute mentions those beneficiaries directly and it doesn't mention anything about substitute beneficiaries. We believe that the negative inference is that Congress knew how to explicitly lay out the types of beneficiary that would benefit from grandfathering. Right. Well, that might be a better argument if it weren't for the fact that there's a sunset provision here. So it would seem odd to have a sunset provision which limits the class of individuals who could qualify and then allow substitute beneficiaries to get around the sunset provision. Yes, Your Honor. The sunset provision is only with respect to when the labor certification has to be filed by. And that's April 30th, 2001. But the statute is silent as to when the substitution could happen which could happen for many years after. For example, the regulation talks about the labor certification being withdrawn, being denied or withdrawn or revoked later. That could happen for years afterward. Well, all of these arguments, I think, suggest ambiguity in the statute. And if we reach that determination and find that the statute is ambiguous as to whether substitute beneficiaries are included, then why shouldn't the government's interpretation be entitled to Chevron deference in this case? Well, Your Honor, because the government's interpretation by promulgating subsection J, we believe it conflicts with subsection A3. Subsection A3 explicitly lays out three instances where the original beneficiary's grandfathering status would be preserved. When the labor cert is withdrawn, denied or revoked later. Now, the government could have easily said, okay, if the labor cert was later substituted out, then the original beneficiary's status would be preserved. But the regulation never says that. Does that regulation apply to labor certification applications, though? Yes, it would, Your Honor, because... I'm sorry, you're talking about... I thought that provision, the A3 provision that you're relying on, applies to visa applications. No, Your Honor, it also applies to labor certification. For example, the employee later on leaves the company or is not interested in working for that employer, then the labor cert is withdrawn. And that's why a lot of employers substitute another hire, a new hire, into the labor cert. Now, as far as I know, the Suisa case, the Fourth Circuit case, was the only case that has dealt with this issue. And I believe that the case is different for two reasons. First, I think the court there was not faced with my argument that subsection A3 is implicated in conflicts with subsection J. And secondly, I believe the Fourth Circuit's concern that Congress intended the benefit of section 245I to be temporary was misplaced. And it's because the way it works in practice is that these cases wind up taking place for many, many years afterward. In other words, the grandfathering status is only kind of like a placeholder. It preserves your status, but you may not even... the alien may not even get his or her green card until years later on a different basis. Not even on the basis of the labor certification, but on the basis of, let's say, marrying a U.S. citizen. If we accept that argument, isn't the regulation still reasonable? Because if you're going to hold a place, the agency could say perhaps that it's okay to hold a place for the original recipient of the certification, but you don't allow someone else to come in and get the benefit of the placeholding. Why is that unreasonable? Your Honor, it's unreasonable because within the structure of that regulation itself, the second sentence of subsection J actually allows the subsequent beneficiary to receive grandfathering benefit, as long as that was done before April 30, 2001. But that was a considered decision to allow it for a particular period of time, and then once it sunsets, there's no longer the conflict that you are espousing. Your Honor, the sunset, as I stated, is with respect to the filing of the labor certification, but the act of substitution may occur many years after. And so the sunset, I think the Fourth Circuit made a policy decision that perhaps Congress intended this to be a temporary problem, but in practice, for example, in this particular case, Mr. Valencia did not even file for his green card adjustment of status until 2009. Didn't the agency make that same policy decision? That there should not be any grandfathering for substitute beneficiaries? Well, the agency is charged with making that kind of determination, Your Honor. We're just saying that in this situation, there's conflicts going on and contradictory regulations. But the conflict that you're relying on to argue that the government's interpretation is not reasonable, I just want to make sure that I have it pinned down, relies on 1245.1083, where it says a visa petition that was properly filed on or before April 30, 2001, and then it goes on to talk about grandfather status, right? Yes, Your Honor. So that references visa petitions, though, not labor applications, certifications. How do you get around that? Your Honor, it's because that whole section has to do with, it also applies to labor certification. It says filing of the immigrant visa petition or qualifying application for labor certification. Oh, I see. So you're relying on the two sentences that precede what I just read to say, well, this whole thing must then apply also to labor certification applications? Yes, Your Honor. Also, in practice, I have these cases where the labor certification has been withdrawn, but it serves as a placeholder. The USCIS also says, okay, the labor cert was withdrawn, but you have retained your grandfathering status in the future. So in practice, I know that they apply it also to labor certification. But the fact that there's some elasticity that's created by the relationship between the statute and the regulation doesn't necessarily suggest that the agency's decision to reduce the level of elasticity is necessarily unreasonable, is it? What they seem, what the sunset, at least in part, provision seems to be addressing is people as much as labor certifications. And if you, we adopt your interpretation of that statute, there's almost no way of avoiding a very high degree of elasticity in terms of substituting people long after the sunset provision falls. And it creates a very, couldn't the agents, couldn't an agency reasonably decide that that's just too elastic in terms of the application of that provision? Well, your honor, in my brief, I explained that we're advocating the position that at any given time, only one alien is allowed to benefit. In other words, before Mr. Valencia here, for example, the previous alien, we don't know what happened to him. He may be struck by a ball of light. Whatever, yes, exactly. And he may never ever move on to obtain a green card. And I don't think it was Congress' intent to allow no one in this kind of a situation to benefit from the grandfathering status. And so to allow Mr. Valencia, for example, here to receive that status would further the purpose and the policy behind Section 245I, behind the statute. But it runs contrary to the temporal restriction. True, there's only one person, but that person comes along many years after the sunset date. And presumably, if he was struck by a ball of lightning and they substituted somebody else, that person might come along many, many years after the sunset. Is that right? Well, yes, Your Honor, but the subsection J as it is now has that situation. For example, you have alien A, the original beneficiary, and then you substitute in alien B before April 30th, 2001. So B, alien B may not, we're not going to know what happened to alien A, for example, but B may not move for green card until way later, until many years after. So the only, we believe this is an arbitrary deadline, April 30th, 2001, with respect to drawing the line, the boundary for substitution. So that's basically opposition, Your Honor. So if you don't have any further questions. Would you like to reserve your time for rebuttal? Yes, I'm sorry, I think I forgot to do that. Two minutes, Your Honor. All right. Thank you, Your Honor. Good morning, Your Honors. Ann Wellhoeffer, Respondent, United States Attorney General Lynch. The issues, the single legal issue in this case has been fully and very thoughtfully fleshed out by two other circuits already. And those cases are cited in my brief. The Lee case out of the Second Circuit and the Suiza case out of the Fourth Circuit, who held and we maintain that the promulgation of the regulation at issue in this case was absolutely a permissible gap-filling provision enacted by the Attorney General and was reasonable interpretation of the statute that Congress enacted. The date, in fact, chosen wasn't arbitrary as it's been suggested. It was specifically the very date designated in the statute. And I would point out that the only real twist in this case and the Suiza case and Lee is simply, the only difference is that this alien is saying, I'm making a new argument. I'm saying that the promulgated regulation is inconsistent with another regulation. So I want to address that first and point out that he's correct. That wasn't argued in the other two cases, but it is without merit. The regulation he talks about, I think, in fact, supports the regulation and the interpretation given by the agency in this case and here's why. It clearly ties the benefit that Congress intended to confer to the individual. And it says if this individual's application was approvable as of this date, if for some reason later it gets revoked, and I was trying in my head to think of an example, perhaps the entity goes out of business. I'm really not sure what specific are those reasons because I'm not overly familiar with the labor process. But the bottom line is the provision says that alien is still protected as long as his application was in pending and approvable as of that date. I think that supports the position that this benefit is to be conferred upon individuals, not a blanket over an entire application in a labor certification process. And I would point out that, again, I'm not an expert in labor certification process, but I think that the agency really balanced to what could be considered competing interests here when they promulgated this regulation. The Department of Labor, they're concerned with the U.S. citizen employer and ensuring he has the workers that he needs. The INA is concerned with the individual alien and what rights are we conferring upon this person. So while there is an ability for some substitution in the labor certification process, and that's reasonable because of the whole goal of the labor certification program, when you're looking at the immigration laws and the whole reason that this particular provision came about, which has been really fleshed out in those two cases as well as all the other cases I cited in my brief, we had a big amnesty law passed in 1986. And this 1255I was born directly out of that amnesty provision. Congress said, oh, my, we've just granted X number of millions of people amnesty. It would be impossible to make them all go to their home country, process their visa apps, and come back in. We've got to create an exception for a small subset of individuals who are both physically present here and had applications pending as of a certain date. We want to deal with those people and only those people, not people who may come in the country well after that date and get substituted later in the labor certification process, as your honors noted. So as the court stated, Lee and Sui said, not only was it a reasonable interpretation of the statute, I don't believe it restricted. I think they could have gone so far as to even say only the initial beneficiaries. They didn't do that. They actually, I think, opened it up to just that small subset of beneficiaries who, even if they were a substitute, had been substituted by the sunset date. I believe the interpretation is reasonable. As the court stated, Lee and Sui said that this court should join her sister courts in finding that it's reasonable as well. The argument that the regulation is inconsistent with 1245.10A3 is unpersuasive and I think, in fact, shows the intent is to benefit an individual who was present as of the sunset date. So if there's no more questions, I would just ask that the court uphold the agency's interpretation of this case as a reasonable exercise of its rulemaking authority and deny the petition for review. Thank you, counsel. Thank you. Your photo? Yes. I just want to explain that there, in the way that this grandfathering benefit is implemented in real life, there is people who are, for example, after acquired spouses, after April 30, 2001, or children that were born after that date are allowed to join in with the principal alien in adjusting their status and benefiting from the grandfathering benefit. So we're analogizing that, okay, the substitution of beneficiary here in the labor cert context, it may happen after April 30, 2001, but why should it be different when the government is allowing after acquired family members to also benefit from that grandfathering status? Well, the agency could have determined that it shouldn't be different, but your argument is that it was required to do that. That's the problem. Well, your Honor, I think it's required in this case because of the conflicting regulation. I mean, for aliens who are trying to legalize, they don't know what to follow. You know, I didn't argue heavily on reliance, but there is an element of reliance on uniform and clear regulation. And so on that basis, we believe that it has to be invalidated. All right. Thank you, counsel. Thank you to both counsel. The case, as argued, is submitted for decision by the court. That completes our calendar for today.
judges: Ponsor, Rawlinson, Nguyen